UNITED STATES of America, Appellee,

v.

Julio LARRACUENTE, Defendant–Appellant.

No. 371, Docket 91–1309.

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1991.

Decided Jan. 3, 1992.

See also 740 F.Supp. 160.

Paul W. Siegert and Hector A. Martinez, New York City, submitted a brief for defendant-appellant.

Jeffrey R. Toobin, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. and Matthew E. Fishbein, Asst. U.S. Atty., on the brief), for appellee.

Before VAN GRAAFEILAND, NEWMAN, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents issues concerning a conviction and a sentence for criminal copyright infringement—trafficking in so-called "bootleg" videotapes of movies. Julio Larracuente appeals from the May 3, 1991, judgment of the District Court for the Eastern District of New York (Carol Bagley Amon, Judge) convicting him of substantive and conspiracy copyright offenses in violation of 17 U.S.C. §§ 106(1), 506(a), (b) (1988) and 18 U.S.C. §§ 371, 2319(b)(1)(B) (1988). Appellant challenges the conviction for lack of evidence that the copyright owners retained their exclusive rights and for insufficient evidence of his criminal conduct, and he challenges the sentence on the ground that the value of the bootleg tapes under the Sentencing Guidelines should have been based on their price in the market for bootleg tapes. We reject his claims and affirm.

## Facts

Larracuente owns and operates a store that rents videocassettes. After an investigator from the Motion Picture Association of America identified tapes rented from the store as counterfeit, surveillance of Larracuente was begun, first by the investigator and later by an F.B.I. agent. On different occasions, Larracuente was observed unloading boxes of blank videotapes from his car into his home and moments later emerging with different boxes of videocassettes, which he placed in his car and unloaded at his store. Sometimes, another person was observed helping appellant with this activity. A search of the home, conducted pursuant to a warrant, disclosed a video counterfeiting laboratory—78 VCRs, 1,670 counterfeit videocassettes of movies, hundreds of covers and stickers for videocassettes, and various videotape copying equipment.

At trial, the Government and the defendant stipulated that, with respect to 41 of the films seized from appellant's house, the copyrights were owned by individuals and businesses other than the defendant and that the copyright owners had not authorized the defendant to reproduce the films. Because of the defendant's objection, the stipulation did not include a statement, proposed by the Government, that the copyright owners "have and had the exclusive right to reproduce, rent and sell the copyrighted motion pictures."

In addition to convicting the defendant of both the substantive and conspiracy offenses, the jury, in answer to an interrogatory, found that the defendant had copied at least 65 copies of copyrighted films within a 180-day period, the statutory threshold for punishment of up to five years' imprisonment and a fine of up to $250,000. 18 U.S.C. § 2319(b)(1)(B).

## Discussion

1. Appellant contends that the evidence was fatally deficient for lack of proof tending to foreclose the possibility that he had been authorized to reproduce the films by licensees of the copyright owners. The stipulation established that the copyright owners had given appellant no authorization, but neither the stipulation nor other evidence precluded the possibility of licenses to third-parties and sub-licenses to appellant.

Though the Government's burden in a criminal copyright infringement case is to persuade beyond a reasonable doubt, we see no reason why the elements to be proven are more than those in a civil copyright infringement case—ownership of a valid copyright and copying. *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). If the accused infringer has been licensed by a licensee of the copyright owner, that is a

matter of affirmative defense. *See Oddo v. Ries,* 743 F.2d 630, 634 n. 6 (9th Cir. 1984); William F. Patry, *Latman's The Copyright Law* 274 (6th ed. 1986). Even if absence of a sub-license could be considered an element of the offense, the defendant would bear the burden of producing some evidence of a sub-license before the prosecution would have to negate the element beyond a reasonable doubt. *See Mullaney v. Wilbur,* 421 U.S. 684, 701 n. 28, 95 S.Ct. 1881, 1891 n. 28, 44 L.Ed.2d 508 (1975) (approving state rules requiring defendant to produce some evidence that he acted in the heat of passion before prosecution must negate that mental state beyond a reasonable doubt). That is the approach the Eleventh Circuit has taken with the somewhat similar defense of "first sale," *see* 17 U.S.C. § 109(a) (1988), obliging the defendant to produce some evidence that the copies were legally made. *See United States v. Goss,* 803 F.2d 638, 644 (11th Cir.1986). Evidence of sub-licensing is obviously readily available to a sub-licensee. Without such evidence, inquiry concerning sub-licensing is pointless. Appellant's theory would oblige the Government to elicit testimony from all licensees of a copyright owner and from all the licensees' sub-licensees, and if the sub-licensees had ever granted further sub-licenses, the inquiry would presumably continue.

■ Moreover, the evidence of appellant's clandestine operation entitled the jury to conclude that he had not been validly authorized to reproduce the films. *See United States v. Whetzel,* 589 F.2d 707, 711–12 (D.C.Cir.1978); *cf. United States v. Moore,* 604 F.2d 1228, 1232–33 (9th Cir. 1979) (evidence of illegitimate origin adequately establishes absence of subsequent distribution after "first sale").

■ 2. Appellant's challenge to the sufficiency of the evidence of a conspiracy is also without merit. He contends that there was insufficient evidence of an agreement between appellant and the unidentified male who helped unload blank tapes into appellant's home and load counterfeit copies from the home into appellant's car. The jury was entitled to infer that the unidentified male had entered not only the home, but also the garage, had seen the counterfeiting facility, and had made some sort of agreement with appellant to distribute the bootleg tapes.

■ 3. Finally, appellant contends that the District Judge erred in ascertaining the retail value of the bootleg tapes for purposes of sentencing. For criminal copyright infringement, the Sentencing Guidelines provide that if the "retail value" of the infringing items exceeds $2,000, the base offense level of 6 is to be increased by the number of levels indicated by the table in section 2F1.1 for losses resulting from fraud and deceit. U.S.S.G. § 2B5.3. Judge Amon credited the prosecution's expert, who testified that the retail price of the films copied by appellant averaged just over $73. She calculated the total value for 2,652 tapes (1,662 seized from appellant's home, plus 490 purchased by investigators and 500 seized from a store supplied by appellant) to be $193,596, resulting in a seven-level adjustment. *Id.* § 2F1.1(b)(1)(H). The guideline range for level 13 in Criminal History Category I is 12 to 18 months, and appellant's sentence was at the bottom of this range.

Appellant challenges the "retail" price evidence, contending that the relevant evidence was that of his witness who testified that bootleg movies sell for $10 to $15. Judge Amon was correct in applying the guidelines to the normal retail price, rather than the lower bootleg price paid by those who presumably are aware that the copies they are buying are not legitimate. The Sentencing Commission has noted that "the enhancement is based on the value of the infringing items, which will generally exceed the loss or gain due to the offense." *Id.* § 2B5.3, comment. (backg'd.). Where, as here, unauthorized copies are prepared with sufficient quality to permit their distribution through normal retail outlets, the value of the infringing items is their normal retail price to ultimate consumers who purchase from such outlets. That price, as contemplated by the Commission, "will generally exceed" the infringer's gain from selling bootleg copies to innocent or not so

innocent retailers. We would have a different question if the infringing items were of obviously inferior quality and were for that reason distributed to consumers who pay far less than the retail price for authentic items.

The judgment of the District Court is affirmed.