**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Chang Ho KIM, Defendant–Appellant.**

**No. 91–7030.**

United States Court of Appeals, Fifth Circuit.

June 3, 1992.

Ward Elmendorf, Asst. Federal Public Defender, Ira Kirkendoll, Federal Public Defender, Dallas, Tex., for defendant-appellant.

Delonia A. Watson, Lynn Hastings, Asst. U.S. Attys., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before DAVIS, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Chang Ho Kim pled guilty to conspiracy to traffic in counterfeit goods—a violation of 18 U.S.C. §§ 371, 2320—and was sentenced[1] based on an offense level calculated pursuant to U.S.S.G. § 2B5.4.[2] In this appeal, Kim challenges the district court's use of section 2B5.4 to increase his base offense level by seven. Although we find that the district court erred in its interpretation of U.S.S.G. § 2B5.4, we find no reversible error in the district court's factual determination of the retail value of an infringing item. Accordingly, we affirm.

I

Between July and September 1990, United States Customs Service agents observed two of Kim's co-defendants, Ok Chin Chambers and William Floyd Chambers, selling counterfeit Gucci and Louis Vuitton handbags at a market in Kansas City, Missouri. On September 12, 1990, after obtaining a warrant to search the Chambers' residence and their two vans, the warrant was executed and the agents seized numerous counterfeit Gucci, Louis Vuitton, and Rolex items.

The following day, the Chambers decided to cooperate with the Customs Service investigation. They provided the telephone number of their supplier (Kim) and indicated that Kim was scheduled to deliver counterfeit merchandise to them that evening. Kim arrived as expected in a pickup truck containing counterfeit Louis Vuitton and Gucci merchandise. In the agent's presence, Ok Chin Chambers told Kim that

---

1. The district court sentenced Kim to a ten-month term of imprisonment, a three-year term of supervised release, and a $50 special assessment.

2. United States Sentencing Commission, *Guidelines Manual,* § 2B5.4 (Nov.1990).

his acquaintance (the United States Customs agent) wanted to purchase some of Kim's merchandise. Kim and the agent walked outside to Kim's pickup where they observed the counterfeit merchandise. Kim gave the agent a price list for the merchandise, and the two men then arranged for more merchandise to be delivered that evening.

Kim returned to his residence and loaded several large containers from his house into his pickup. As Kim started to leave, agents arrested him, and obtained his identification and consent to search his vehicle and residence. Subsequently, agents seized assorted items of counterfeit merchandise bearing the Gucci and Louis Vuitton trademarks.

## II

Kim was convicted of conspiracy to traffic in counterfeit goods—a violation of 18 U.S.C. §§ 371, 2320. In imposing Kim's sentence, the district court increased Kim's base offense level by seven, pursuant to U.S.S.G. § 2B5.4(b)(1).[3] Kim appeals his sentence, contending that the district court erroneously increased his offense level by using the retail value of the items being infringed—rather than the retail value of the counterfeit (infringing) items. The government argues that the district court properly interpreted section 2B5.4 and was correct in using the value of the genuine merchandise.[4]

■ A sentence imposed under the guidelines will be upheld on appeal unless the defendant demonstrates that the sentence was imposed in violation of the law, was imposed due to an incorrect application of the guidelines, or was outside the applicable guideline range and was unreasonable. *See United States v. Shano*, 955 F.2d 291, 294 (5th Cir.) (citations omitted), *cert. dismissed*, — U.S. —, 112 S.Ct. 1520, 118 L.Ed.2d 201 (1992). We review the district court's interpretation of section 2B5.4 de novo. *See United States v. Singleton*, 946 F.2d 23, 24 (5th Cir.1991) (citation omitted), *cert. denied*, — U.S. —, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992).

■ The district court used section 2B5.4—entitled "Criminal Infringement of Trademark"—which is the guidelines section applicable to 18 U.S.C. § 2320. Section 2B5.4(b)(1) provides for an increase in a defendant's offense level if the "retail value of the *infringing items*" exceeds $2,000. U.S.S.G. § 2B5.4(b)(1) (emphasis added). This section also provides that, if the value exceeds $2,000, the district court should increase the base offense level in accordance with the table in U.S.S.G. § 2F1.1 (Fraud and Deceit). *Id.*

Although the phrase "retail value of the infringing items" is not expressly defined in the guidelines,[5] we find that, because that phrase is plain and unambiguous, it should be accorded its ordinary, contemporary meaning. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) (citation omitted) ("A fundamental canon of statutory construction is that, unless otherwise defined,

---

**3.** The district court used $195,400—the figure contained in Kim's presentence report (PSI). The district court stated: "The Court finds that the retail value that is intended to be taken into consideration by the guideline Section 2B5.4(b)(1) is the retail value of the legitimate item rather than the counterfeit item." Record on Appeal, Vol. 3 at 3, *United States v. Kim*, No. 91–7030 (5th Cir. filed Nov. 18, 1991) ("Record on Appeal").

**4.** In summarizing its argument, the government contends that "[n]o reported cases have been found which define 'retail value of the infringing item'; however, a review of other guidelines shows that the only reasonable interpretation is that the value of the legitimate item must be used." Government's Brief on Appeal

at 4, *United States v. Kim*, No. 91–7030 (5th Cir. filed Dec. 23, 1991).

**5.** The Background section to the Commentary to section 2B5.4 notes that the "Commission concluded that trademark infringement is roughly comparable to copyright infringement." U.S.S.G. § 2B5.4, comment (backg'd). The section applicable to copyright infringement, U.S.S.G. § 2B5.3, also does not provide definitions of terms used in the guidelines. The Background section to the Commentary to section 2B5.3 states, "This guideline treats copyright violations much like fraud. Note that the enhancement is based on the value of the infringing items, which will generally exceed the loss or gain due to the offense." U.S.S.G. § 2B5.3, comment. (backg'd).

words will be interpreted as taking their ordinary, contemporary, common meaning."); *United States v. Chen,* 913 F.2d 183, 189 (5th Cir.1990) (" '[W]e start with [the statute's] plain words without pausing to consider whether a statute differently framed would yield results more consistent with fairness and reason.' "), *quoting Garcia v. Gloor,* 618 F.2d 264, 268 (5th Cir. 1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). In the present case of trademark violation, we find that the clear and unambiguous phrase "retail value of the infringing items" refers to the counterfeit merchandise. This phrase does not, by its terms, refer to the retail value of genuine merchandise—the items subject to infringement. Accordingly, we hold that the district court erred in its interpretation of section 2B5.4. The proper determination is the retail value of the counterfeit merchandise Kim intended for sale.

**6.** Paragraph 10 of the PSI states:

Original Louis Vuitton or Gucci handbags are worth at least $275 each. Original Louis Vuitton or Gucci watches are worth at least $200 each. Original Rolex watches are worth at least $3,000. These figures are conservative based on the retail value. Based on the merchandise seized by customs agents, the estimated retail value of the items outlined above is approximately $195,400.

Presentence Report, *United States v. Kim,* No. 91–7030 (5th Cir. filed Nov. 21, 1991).

**7.** Kim contends on appeal that, in imposing his sentence, the district court was aware that there were two different values: (1) the retail value of the genuine merchandise and (2) the retail value of the counterfeit merchandise. Kim also argues that, despite the probation officer's assertion that there was no way to ascertain the retail value of the counterfeit merchandise, the PSI belies this assertion because it indicates that an agent purchased three counterfeit handbags for $102, and it also indicates the retail value of the counterfeit merchandise could be determined by using the price list Kim gave to the agent.

**8.** The colloquy between the district court, Kim's attorney, and the probation officer focuses the issue:

MR ELMENDORF [Kim's attorney]: I guess my concern is we feel there is a distinguishment [sic] between a retail value of—or what Mr. Kim sold his products for; the retail value of what he sold it for rather than the retail value of an actual true item.

THE COURT: Now, Ms. Denton, you formed the calculations on these. Would you tell me

Although the district court erred in its interpretation of section 2B5.4, we have reviewed the record as a whole and find a remand unwarranted. *Williams v. United States,* ─── U.S. ───, ───, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341, 355 (1992). At sentencing, the district court found the retail value of the items seized from Kim was approximately $195,400, based on the evidence the government offered of the retail value of genuine merchandise.[6] Kim, citing section 2B5.4, objected to the use of the retail value of the genuine merchandise; however, he made no attempt to submit evidence of the retail value of the infringing items.[7] Accordingly, we determine whether the evidence offered by the government of the retail value of genuine merchandise is relevant evidence of the retail value of the infringing (counterfeit) merchandise.[8] *Id.*

which items you used when you—in arriving at the $195,000 figure.

MS DENTON [the probation officer]: I used the total amount of items that were confiscated over all for the whole offense, the Rolex watches and the bags.

THE COURT: But which retail value did you use?

MS DENTON: The retail value of the original items. It's our position, your Honor, that there is no way to tell how much a fake Rolex watch would actually retail for, and that the— these items are actually sold to people as similar items to a Rolex watch, and they are infringing upon the copyright of the actual merchandise of Rolex or Gucci, and that the actual price should be used of those items.

THE COURT: Well, that was my assessment of what you had done, and that's the assessment the Court believes is proper. So the Court is finding that it is the original item's value—the retail value of the original item using the infringing items as being the ones to calculate from, but not the—the value that an infringing item would be sold at. It's the Court's position that when a person decides to handle counterfeit items, that is the risk the person takes. Obviously, they are going to counterfeit relatively expensive items because the mark-up would be that much greater.

MR ELMENDORF: I understand that, that concept, and we—our position is the direct wording of the guideline does not support that.

Record on Appeal, Vol. 3 at 4–5. Determining whether evidence of the retail value of genuine merchandise is relevant to the retail value of the infringing items presents a factual issue, distinct

■ We apply due deference to the district court's application of section 2B5.4 to the facts and review the district court's factual findings for clear error. *See United States v. Medina–Saldana*, 911 F.2d 1023, 1024 (5th Cir.1990) (citations omitted). The government, as the party seeking to adjust Kim's sentence level, has the burden of proving by a preponderance of the evidence the facts necessary to support the adjustment. *See United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir.1990), *citing, e.g., United States v. Mourning*, 914 F.2d 699, 706 (5th Cir.1990). "In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

■ Although we have not found any authority discussing what evidence is relevant to establish the "retail value of the infringing items" under section 2B5.4, one circuit court has addressed the application of U.S.S.G. § 2B5.3 to ascertain the retail value of infringing items—bootleg tapes in that case—for sentencing purposes. *See United States v. Larracuente*, 952 F.2d 672 (2d Cir.1992).

In *Larracuente*, the Second Circuit found the district court correctly used the retail value for genuine merchandise to determine the increase in the defendant's offense level under section 2B5.3. *Id.* at 674. The Second Circuit found that, because "unauthorized copies [of bootleg tapes] are prepared with sufficient quality to permit their distribution through normal retail outlets, the value of the infringing items *is* their normal retail price...." *Id.* (emphasis added).[9]

Here, the district court based its sentence on the PSI and the testimony at the sentencing hearing. In the PSI, the government offered evidence of the retail value of genuine merchandise.[10] A "presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines." *Alfaro*, 919 F.2d at 966, *citing United States v. Murillo*, 902 F.2d 1169, 1173 (5th Cir.1990). In addition, the probation officer testified at the sentencing hearing that there was no way to determine the retail price of counterfeit items.[11] We cannot say that the district court's finding—that the retail value of the items seized from Kim was $195,400, based on "the [probation officer's] assessment"[12]—is clearly erroneous. We are required to give due regard to the sentencing court's opportunity to judge the credibility of the witnesses, and must accept the district court's findings of fact unless clearly erroneous. *See* 18 U.S.C. § 3742(e). We find that, under the facts of this case, the retail value of genuine merchandise is relevant in determining the retail value of the infringing items.

We find additional support for our decision in the application notes to sections 2B1.1 and 2F1.1. *See* U.S.S.G. § 2F1.1 comment (n. 7 and n. 8). "The amount of loss need not be precise.... The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1 comment. (n. 8). "Where the market value is difficult to ascertain ..., the court may measure loss in some other way...." U.S.S.G. § 2B1.1 comment. (n. 2). Moreover, "[t]he loss need not be determined with precision, and may be inferred from any reasonably reliable

---

and separate, from the legal interpretation of section 2B5.4. *See* U.S.S.G. § 6A1.3(a). We disagree with Kim that "the direct wording of the guideline" would *always* prohibit the introduction of the retail value of the genuine merchandise. *See, e.g., United States v. Larracuente*, 952 F.2d 672 (2d Cir.1992).

9. The Second Circuit expressly noted, "[w]e would have a different question if the infringing items were of obviously inferior quality and

were for that reason distributed to consumers who pay far less than the retail price for authentic items." *Id.* at 675.

10. *See supra* note 6.

11. *See supra* note 8.

12. *See supra* note 8.

information available...." *Id.* comment. (n. 3) Although the concept of "loss" is not mentioned in section 2B5.4, section 2B5.4 does refer to the table in section 2F1.1 for the purpose of enhancing a defendant's base offense level. *See* U.S.S.G. § 2B5.4(b)(1).[13] Given the difficulty in this case of determining "how much a[n infringing item] would actually retail for," the district court was not clearly erroneous to "measure loss in some other way" which "may be inferred from any reasonably reliable information available." U.S.S.G. § 2B1.1 comment. (n. 2 and n. 3).

Kim argues that there is sufficient evidence to calculate the value of the counterfeit items. He points out that the PSI describes the agents' purchase of three handbags for $102 in July 1990 and refers to the price list Kim gave to the agents in September 1990. We disagree that this is sufficient evidence. First, the district court was unable to consider the price list because neither party presented it at sentencing and it was not otherwise in the record. Without the price list, the record is devoid of evidence pertaining to the retail price of counterfeit Rolex, Gucci, or Louis Vuitton merchandise. Moreover, the list Kim gave to the agents was a *wholesale* price list. Section 2B5.4 requires a determination of retail prices. Kim has offered no evidence on the relationship between wholesale and retail prices. Even if the price list were in evidence, then, there would be no definitive figures upon which to base the necessary calculations. We do agree with Kim that the price paid by the agents for the three handbags is evidence of the retail counterfeit price for those items. But there is no evidence that $34 was the ordinary retail price for counterfeit Louis Vuitton handbags. There is also no evidence as to the number of counterfeit Louis Vuitton handbags found.[14] Thus Kim has not shown that the evidence regarding the handbags is sufficient to reduce the amount of counterfeit merchandise by at least $75,400, the amount neces-

sary to decrease his offense level by one. *See* U.S.S.G. § 2F1.1(b)(1)(H). Accordingly, no remand is necessary. *Williams*, —— U.S. at ——, 112 S.Ct. at 1120–21, 117 L.Ed.2d at 355.

### III

For the foregoing reasons, we AFFIRM.

---

**13.** *See also supra* note 5.

**14.** The PSI attributes to Kim a total of 316 "assorted items" of counterfeit Louis Vuitton

merchandise. The PSI does not specify how many of these 316 were handbags, and Kim did not ask for such a breakdown.