**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20479
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHONG N.CHO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

March 5, 1998

Before DUHÉ, DeMOSS & DENNIS, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

Chong Cho ("Cho") appeals her sentence after pleading guilty to two counts of trafficking in counterfeit goods. She contends that the district court erred in applying United States Sentencing Guidelines ("U.S.S.G.") §§ 2B5.3 and 2F1.1 to calculate her sentence. For the following reasons, we find no error in the district court's application of the Sentencing Guidelines and therefore affirm Cho's sentence.

### BACKGROUND

Cho and her husband owned a business in Houston, Texas, called C&S Design Handbag and Luggage ("C&S") from around 1992 to 1996.

United States Customs agents began surveillance at C&S in 1995 based on information that C&S had received counterfeit merchandise from a company in Philadelphia. The agents subsequently received permission to search two nearby business suites used as storage space by C&S. The agents found counterfeit merchandise in each suite valued at over $99,000 and $27,000, respectively.

In May, 1996, a confidential informant went into C&S and talked to Cho about purchasing counterfeit goods. The CI subsequently purchased two counterfeit Dooney & Bourke handbags and one counterfeit Louis Vuitton handbag for $50. On June 12, 1996, the agents executed a search warrant at C&S. They seized 9,257 pieces of counterfeit merchandise with an estimated retail value between $76,000 and $125,000.

Cho pled guilty to two counts of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a). The district judge sentenced Cho under U.S.S.G. § 2B5.3, which mandates a base offense level of six. The judge determined that $123,921 was the retail value of the counterfeit merchandise for which Cho could be held accountable. Because the retail value of the "infringing items" exceeded $2,000, § 2B5.3(b)(1) directed the judge to "increase [Cho's offense level] by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)." The judge then applied the above amount ($123,921) to the table in § 2F1.1 and increased Cho's offense level by seven levels. See U.S.S.G. § 2F1.1(b)(1)(H). Because the district judge awarded Cho a two-level reduction for acceptance of responsibility, her total offense level

2

was eleven.  The court sentenced Cho to two concurrent fourteen-month terms of imprisonment, two concurrent three-year terms of supervised release, restitution in the amount of $6,633.95, and a special assessment of $200.  The court then granted Cho's motion for leave to file an out-of-time appeal.

**DISCUSSION**

I.

U.S.S.G. § 2B5.3, "Criminal Infringement of Copyright or Trademark," directs a sentencing court to increase a defendant's offense level by the corresponding number of levels from the Fraud and Deceit table in § 2F1.1, but only "[i]f the retail value of the infringing items exceed[s] $2,000."  The Fraud and Deceit table in § 2F1.1, however, is calibrated in terms of "loss,"[1] rather than "retail value."

Cho argues that, once the infringing items cross the $2,000 "retail value" threshold of § 2B5.3, a sentencing court should then, according to the plain language of § 2F1.1(b)(1),[2] calculate the "loss" resulting from Cho's trademark infringement.  That figure ("loss") and *not* the retail value of the infringed items, Cho contends, should determine her enhancement under the § 2F1.1 table.

The district court disagreed.  Relying on § 1B1.5, the

_____

[1]"Loss" is defined in the Application Notes to U.S.S.G. § 2B1.1 as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1, comment. (n.1).

[2]The prefatory sentence to the table contained in § 2F1.1(b)(1) reads:  "If the loss exceeded $2,000, increase the offense level as follows...."

3

Commentary to § 2B5.3, and our decision in <u>United States v. Kim</u>, 963 F.2d 65, 67-8 (5th Cir. 1992), the district judge found that the reference in § 2B5.3 to the § 2F1.1 table refers only to the dollar amounts and their corresponding levels and does not incorporate the subsection's reliance on "loss." The court therefore used the retail value of the counterfeited items in applying the § 2F1.1 table and enhancing Cho's offense level.

II.

We review the district court's interpretation of the Sentencing Guidelines *de novo* and its application of the guidelines to the facts for clear error. <u>United States v. Shano</u>, 955 F.2d 291, 294 (5th Cir. 1992); <u>United States v. Singleton</u>, 946 F.2d 23, 24 (5th Cir. 1991). A sentence imposed under the guidelines will be upheld on appeal unless the defendant demonstrates that the sentence was imposed in violation of the law, was imposed due to an incorrect application of the guidelines, or was outside the applicable guideline range and was unreasonable. <u>See</u> <u>Shano</u>, 955 F.2d at 294.

The Background Commentary to § 2B5.3 strongly supports the Government's position that the retail value of the infringing items should determine the § 2F1.1 enhancement:

> This guideline treats copyright and trademark violations much like fraud. *Note that the enhancement is based on the value of the infringing items, which will generally exceed the loss or gain due to the offense.*

U.S.S.G. § 2B5.3, comment. (backg'd)(emphasis added). Cho argues that the Background Note is "simply a clarification of § 2B5.3 and

4

emphasizes that the sentencing court is to use the retail value of the infringing items in order to determine whether it must enhance the offense level according to § 2F1.1(b)(1)." Cho misreads the guideline Commentary. The Background Note does not merely alert the sentencing court that a possible reference to the § 2F1.1 table depends on the retail value of the counterfeited items. Instead, the Note explicitly states that the *enhancement itself* will be based on retail value. The Note even takes pains to observe that this value will generally *exceed* the loss or gain caused by the infringement. Cho's reading of the Background Note would transform it into misleading surplusage.

Furthermore, U.S.S.G. § 1B1.5(b)(2) explains that

> [a]n instruction to use a particular subsection or table from another offense guideline refers only to the particular subsection or table referenced, and not to the entire offense guideline.

Cho maintains that the reference in § 2B5.3 is in fact to the entire subsection in which the table is included, i.e., § 2F1.1(b)(1); thus, § 2B5.3 incorporates by reference the reliance on "loss" mandated by the prefatory sentence in § 2F1.1(b)(1). <u>See</u> <u>supra</u> note 2.

Again, Cho misreads the guidelines. Section 2B5.3(b)(1) makes explicit reference, *not* to § 2F1.1(b)(1) as a subsection, but instead to "the table in § 2F1.1."[3] Section 1B1.5(b)(2)

---

[3]We recognize that the Eighth Circuit, in <u>United States v.</u> <u>Lamere</u>, 980 F.2d 506, 511-12 (8th Cir. 1992), may have reached a contrary conclusion. Language in <u>Lamere</u> could be taken to mean that a reference to "the table in 2F1.1" is actually a reference to the entire subsection (§ 2F1.1(b)(1)) in which the table is

specifically foresees that one guideline section might refer only to a table from another section; in such a case, § 1B1.5 instructs the sentencing court to refer, as the district court correctly did here, only to the "table referenced." Thus, the reference in § 2B5.3 to "the table" in § 2F1.1, combined with the explicit adoption of "retail value" in the § 2B5.3 Background Commentary as the measure of enhancement, convinces us the Government's interpretation is the correct one.

Cho makes an ingenious argument in reliance on <u>United States v. Kim</u>, 963 F.2d 65 (5th Cir. 1992), which, unfortunately for Cho, studiously disregards the holding and import of <u>Kim</u>. In <u>Kim</u>, this Court held that the proper measure for an enhancement under § 2B5.4(b)(1)[4] was the value of the *counterfeited* items, and not the value of the *genuine* items. <u>Id</u>. at 68. We further found, however, that it was not clear error for the district court to rely on the

_____

contained. ("In referring to Application Note 7, the district court did not consider characteristics in addition to those contained in *§ 2F1.1(b)(1)--the "table."*). <u>Lamere</u>, 980 F.2d at 512 (emphasis added). We disagree with that statement only insofar as it would require a court applying § 2B5.3 to recalculate "loss" for the § 2F1.1 table, when the court had already calculated "retail value of the infringing items" in § 2B5.3. In our view, the Background Commentary to § 2B5.3 forecloses such an interpretation of the guidelines. <u>See</u> discussion <u>supra</u>. We note, however, that <u>Lamere</u> simply held that it was not error for the district court to refer to the Application Notes under § 2F1.1 for guidance in interpreting the word "loss." <u>See</u> <u>Lamere</u>, 980 F.2d at 512. We also note that <u>Lamere</u> involved the interpretation of a different guideline section, § 2B5.1 ("Offenses Involving Counterfeit Bearer Obligations of the United States"). <u>See</u> <u>Lamere</u>, 980 F.2d at 511.

[4]Section 2B5.4 was deleted by consolidation with § 2B5.3, effective November 1, 1993. <u>See</u> U.S.S.G. § 2B5.4 [Deleted], historical note (1995). Section 2B5.4 is identical to the present § 2B5.3. <u>Cf</u>. U.S.S.G. § 2B5.4 (1990) <u>with</u> § 2B5.3 (1995).

retail value of the genuine items in assessing the retail value of the counterfeit items; such evidence was relevant to the counterfeit items' value, particularly given testimony as to the difficulty of calculating the "retail price of counterfeit items." Id. at 69.

Cho seeks to rob Kim of its precedential value by misstating its holding. Cho asserts that, in Kim, we were concerned merely with determining whether the value of the infringing items exceeded the $2,000 threshold of § 2B5.4 (now § 2B5.3); thus, claims Cho, Kim says nothing about the application of the § 2F1.1 table. Cho adds that the Court's reference to the Commentary to § 2F1.1[5] was simply to support its interpretation of § 2B5.4, and was not meant as an interpretation of § 2F1.1 itself. Id. at 69-70. Common sense and the clear implications of Kim counsel against Cho's reading.

It is patently clear that the Kim court was concerned with calculating "retail value" not to determine *whether or not* to apply the § 2F1.1 table, but instead *in order to* apply the table itself. The Court stated:

> Kim appeals his sentence, contending that the district court *erroneously increased his offense level* by using the retail value of the items being infringed--rather than the retail value of the counterfeit (infringing) items.

Kim, 963 F.2d at 67 (emphasis added). Kim was complaining about an

---

[5]See, e.g., U.S.S.G. § 2F1.1, comment. (n. 7)("The amount of loss need not be precise.... The court need only make a reasonable estimate of the loss, given the available information); (n.8)("Where the market value is difficult to ascertain..., the court may measure loss in some other way....).

"erroneous increase" to his offense level--which presupposes application of the § 2F1.1 table--and not about the district court's decision to use the table at all.

Further, the Court cited the Second Circuit's decision in United States v. Larracuente, 952 F.2d 672 (2nd Cir. 1992) for the proposition that the district court there, given the similarity of bootleg tapes to the actual merchandise, "correctly used the retail value for genuine merchandise *to determine the increase in the defendant's offense level* under section 2B5.3." Kim, 963 F.2d at 69 (emphasis added). Again, the Kim court was interested, as was the Larracuente court, in determining retail value for purposes of applying the 2F1.1 table -- not, as Cho claims, for assessing whether the § 2B5.3 $2,000 threshold had been met.

Finally, and perhaps most convincing, are the monetary amounts addressed in Kim. The district court had determined that the retail value of the items seized from Kim was $195,400, based on the retail price of genuine merchandise. Kim, 963 F.2d at 68. Kim argued that there was sufficient evidence presented at sentencing from which the district court could have calculated the retail value of the *counterfeit* items. Id. at 70. The Court found, to the contrary, that there was insufficient evidence of the price of the counterfeit items, and that the district court was therefore not clearly erroneous in relying on the price of genuine articles. Id. Specifically referring to the lack of evidence of both price and quantity of counterfeit Louis Vuitton handbags, the Court stated:

8

> Kim has not shown that the evidence regarding the handbags is sufficient to reduce the amount of the counterfeit merchandise by at least $75,400, *the amount necessary to decrease his offense level by one*. See *U.S.S.G. § 2F1.1(b)(1)(H)*.

Id. (emphasis added).

In our view, this statement by the Kim court establishes beyond any doubt that the court was concerned with calculating retail value for comparison with the dollar amounts and corresponding level adjustments found in the § 2F1.1 table. Common sense compels this conclusion as well. The Court was dealing with an initial retail value assessment by the district court of over $195,000. It found that assessment was not clearly erroneous based, in part, on its finding that Kim could not produce sufficient evidence of the infringing items' value to reduce the total value by some $75,000, the amount necessary to move Kim one level down on the § 2F1.1 table. If the Kim court had been, as Cho insists, concerned with the $2,000 threshold amount in § 2B5.3, a discussion of monetary values in excess of $195,000 and $75,000 would have been ridiculous at best. Contrary to Cho's assertions, Kim stands squarely for the proposition that the retail value of the infringing items determines the § 2F1.1 enhancement.

Although not cited by either party, our decision in United States v. Thomas, 973 F.2d 1152 (5th Cir. 1992), could be read to support Cho's argument. Thomas involved the sentencing of a defendant who had been convicted of illegal activities involving the alteration of motor vehicle identification numbers, in violation of 18 U.S.C. §§ 511-12, 2321-22. Id. at 1155. The

9

Sentencing Guideline applicable to those offenses -- § 2B6.1 -- is in pertinent part identical to § 2B5.3:

> If the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

U.S.S.G. § 2B6.1(b)(1). The Thomas court held that the district court properly used "loss," rather than retail value, in applying § 2B6.1 to § 2F1.1. Thomas, 973 F.2d at 1159.

One could read Thomas as conflicting with Kim. We need not distinguish Thomas here, however. Following Thomas, Application Note 2 was added to § 2B6.1:

> The "corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)," as used in subsection (b)(1), refers to the number of levels corresponding to the retail value of the motor vehicle or parts involved.

U.S.S.G. § 2B6.1, comment. (n.2), effective November 1, 1993 (see Appendix C, Amendment 482)(1995). That amendment seems to us to remove any doubt Thomas might have cast on Kim.

## CONCLUSION

For the foregoing reasons, we find that the district court correctly applied U.S.S.G. §§ 2B5.3 and 2F1.1 in calculating Cho's sentence and we therefore AFFIRM.

AFFIRMED.

10