**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hoai BAO, Defendant–Appellant.**

**No. 98–50308.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1999.

Decided Aug. 16, 1999.

Alan Rubin, Epstein, Adelson & Rubin, Los Angeles, CA, for defendant–appellant.

Charlaine Olmedo, Assistant U.S. Attorney, Los Angeles, CA, for plaintiff–appellee.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges, and REED,* District Judge.

## OPINION

TASHIMA, Circuit Judge:

Hoai Bao appeals his conviction for conspiracy to traffic in, and trafficking in, counterfeit computer documentation and packaging in violation of 18 U.S.C. §§ 371 and 2318. Bao argues that an exculpatory statement he made to a newspaper reporter was erroneously excluded at trial. He also contends that his sentence was miscalculated because the district court overvalued the software manuals he illegally copied. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

### I.

Bao was at the lowest rung of a conspiracy to counterfeit Microsoft "Windows 95" packages, including the software on CD–Rom and a manual. The conspiracy's ringleader, Jerry Mao, first approached printer John Tran and offered to pay him $80,000 to print 40,000 counterfeit Microsoft manuals. After learning that the print-job was illegal, John Tran referred the order to Huy Tran, who owned Vy's Printing shop. Because Huy Tran could not print the entire job at his shop, he subcontracted some of the work out to Huy Nguyen, who managed Newest Printing Shop, and to Bao's print shop, Mission

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

Graphics. In addition to copying 5,000 manuals, Bao also printed other accompanying counterfeit packaging materials, including CD–Rom inserts and product registration cards with counterfeit pre-paid postage stamps.

When the police came to investigate Mission Graphics on May 1, 1997, after receiving information that an illegal print-job was taking place there, Bao was present in the shop and identified himself as the owner. He refused to consent to a search of the shop, and Detective Marcus Frank left to get a search warrant while other officers remained to secure the location. After Detective Frank returned with a warrant, a cursory search confirmed that counterfeit Microsoft materials were being printed in the shop. Bao then told Detective Frank that Huy Tran of Vy's Printing had placed the order and paid him $5,000. Bao also disclosed that Huy Tran was actually in the shop at that moment.

Detective Frank approached Huy Tran who in turn told the detective that he had originally been approached by John Tran about the printing order. Huy Tran agreed to take Frank to John Tran's residence. Detective Frank and Huy Tran then left, leaving several agents behind at the scene. Bao had still not been arrested. A newspaper reporter, Mai Tran, arrived at Bao's shop and interviewed him in Vietnamese. In Vietnamese, Bao told her, "I didn't know it was illegal. If I did, I wouldn't have accepted the order." This statement was printed in an article in the *Orange County Register*.

Upon Detective Frank's return approximately one hour later, he and Detective Tom Rackleff interviewed Bao in English, in the presence of a civilian police interpreter, Jenny Truong. According to the government, Bao told the detectives he knew it was illegal to print the manuals. Soon after, Bao was placed under arrest.

Before trial Bao moved to suppress the inculpatory statements he made to the officers at his shop, contending that he had not been advised of his *Miranda* rights

before he made the statements. The government argued that Bao was not "in custody" for purposes of the *Miranda* rule at the time he made the statements and thus was not entitled to have his rights read to him. The district court denied the motion to suppress the evidence.

At trial, Bao's primary defense was that he did not know the printing job was illegal. During the government's case-in-chief, Detective Rackleff and the interpreter both testified that Bao admitted to the officers that he knew the printing job was illegal. Subsequently, Bao attempted to introduce the exculpatory statement he had made to the newspaper reporter, but the district court excluded the statement as inadmissible hearsay. Bao took the stand in his own defense and testified that he did not know that the printing job was illegal.

Amy Auyang, an employee of Microsoft, appeared as a witness for the government. She testified that the "Windows 95" manuals that Bao was printing had no independent value, and that their value came from being part of the complete software package. On cross-examination, Bao's counsel questioned her about the price of independently-sold manuals of comparable length and content published by Microsoft. Auyang testified that a comparable manual sold by itself would have a retail value of $12.

The jury returned a guilty verdict. At sentencing, the district court determined that the manuals had a value of $50 each and sentenced Bao accordingly. Bao received a sentence of three years' probation with a condition that he spend four months in home detention.

## II.

### Exclusion of Evidence Under Hearsay Rule

 Whether the district court correctly construed the hearsay rule is a question of law reviewed de novo. *See*

*United States v. Collicott,* 92 F.3d 973, 978 (9th Cir.1996). We review for abuse of discretion the trial court's decision to exclude evidence under the hearsay rule. *See United States v. Matta–Ballesteros,* 71 F.3d 754, 767 (9th Cir.1995), *amended by,* 98 F.3d 1100 (9th Cir.1996), *cert. denied,* 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997).

## A. Rule 801(d)(1)(B) "Prior Consistent Statement"

Bao contends that his statement to the reporter was not hearsay and therefore should have been admitted because it was a "prior consistent statement" under Federal Rule of Evidence 801(d)(1)(B). An out-of-court statement is not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statement, and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed.R.Evid. 801(d)(1)(B); *see United States v. Frederick,* 78 F.3d 1370, 1377 (9th Cir.1996). "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited.... The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States,* 513 U.S. 150, 157–58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). In *Tome,* the Supreme Court "added a 'temporal' requirement, holding that prior consistent statements made after the date of the alleged motivation to lie are inadmissible." *Frederick,* 78 F.3d at 1377; *see Tome,* 513 U.S. at 167, 115 S.Ct. 696. Therefore, the party offering the statement must establish four elements under Rule 801(d)(1)(B): "(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *Collicott,* 92 F.3d at 979.

The district court concluded that, rather than rebutting any charge of fabrication or motive to lie, Bao's statement to the reporter that he did not know the printing job was illegal would serve only to bolster the veracity of Bao's testimony that he was unaware that he was involved in a counterfeiting operation.

Bao contends that his statement to the reporter was made before any motive to falsify his testimony would have arisen. He argues that, at the time he made the statement, he was not yet under arrest, and was not even an official suspect. Further, he points to the fact that the government had defended itself against Bao's pre-trial motion to suppress his roughly contemporaneous statements to the police on the ground that Bao was not "in custody" for purposes of *Miranda,* and thus felt free to leave and not pressured by the police. Bao contends that the government is estopped from now arguing that, at the time Bao spoke to the reporter, he would have had a motive to lie to the reporter.

We disagree that Bao made his statement to the reporter at a time when he would have had no motive to fabricate his testimony. At the time Bao spoke to the reporter, it was clear that an investigation of Bao and his printing operation was underway. The police had procured and executed a search warrant when Bao refused to give his consent to a search. They discovered manuals on the premises and questioned him specifically about them. While Detective Frank was off investigating another lead in the case, several agents remained to secure the store. At that point, Bao clearly had a motive to misrepresent to the reporter his knowledge of the crime he had committed. *See Collicott,* 92 F.3d at 979 (concluding that declarant's motive to fabricate would have

existed from the moment she was stopped by the police); *United States v. Miller,* 874 F.2d 1255, 1274 (9th Cir.1989) (holding that declarant's motive to fabricate exculpatory testimony was strong because she was under criminal investigation).

We are not swayed by the fact that the government contended that Bao was not "in custody" when he made the statements to the police that Bao moved to suppress. In *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Supreme Court held that "[a]lthough ... the [defendant's] confession was found to be voluntary for Fifth Amendment purposes, such a finding does not bear on the question of whether the confession was also free from any desire, motive, or impulse [the defendant] may have had ... to mitigate the appearance of his own culpability...." *Id.* at 544, 106 S.Ct. 2056. Similarly, the fact that Bao was found not to be "in custody" at approximately the same time he spoke to the reporter does not mean that he was not on notice at that point that he could be considered a suspect and arrested or charged later. Bao's motive to fabricate would have predated his exculpatory statement to the reporter; thus, Bao cannot satisfy all the requirements of Rule 801(d)(1)(B).

The statement is also inadmissible under Rule 801(d)(1)(B) because the government had never charged that Bao would fabricate his testimony or that he had a motive to lie. Bao contends that the government made an implied charge of fabrication or improper motive by having the police detectives testify during the government's case-in-chief that Bao admitted to them that he knew the printing job was illegal, when this testimony contradicted Bao's subsequent testimony that he did not know the printing job was unlawful.

■ Bao's argument fails for several reasons. First, "[m]ere contradictory testimony cannot give rise to an implied charge of fabrication." *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir. 1986). Furthermore, the government introduced evidence of Bao's admission of guilt in order to establish his guilty knowledge, an indispensable element of the crimes for which he was being tried. To ascribe another purpose to the government's conduct would be reaching too far. Finally, the government introduced the evidence during its case-in-chief, at which point Bao had not yet testified. Bao sought to introduce the exculpatory statement before he had even taken the stand and given testimony that contradicted the officers' testimony and before the government even had an opportunity to cast Bao's testimony as contrived. Because the government had not alleged that Bao had a motive to fabricate his testimony, Bao's statement does not fall within Rule 801(d)(1)(B). *See United States v. Navarro–Varelas,* 541 F.2d 1331, 1334 (9th Cir. 1976) (defendant's prior consistent statement properly excluded where his testimony had not been attacked as fabricated).

"The Rules do not accord ... weighty, nonhearsay status to all prior consistent statements." *Tome,* 513 U.S. at 157, 115 S.Ct. 696. The district court did not abuse its discretion in refusing to admit Bao's statement to the reporter under Rule 801(d)(1)(B) because Bao cannot show that the statement was made before a motive to fabricate his testimony would have arisen, nor can he establish that the government charged fabrication or a motive to lie on his part.

### B. Impeaching the Government Witnesses' Credibility

■ Bao contends that his statement to the reporter was admissible to impeach the credibility of the law enforcement agent and the interpreter who both testified that Bao admitted to them that he knew his conduct was illegal. In essence, Bao offers his statement as a prior inconsistent statement to impeach these witnesses' credibility.

■ "A basic rule of evidence provides that prior inconsistent statements

may be used to impeach the credibility of a witness." *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir.1991) (quoting *United States v. McLaughlin*, 663 F.2d 949, 952 (9th Cir.1981) (quoting *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975))). A prior inconsistent statement is admissible to raise the suggestion that if a witness makes inconsistent statements, then his entire testimony may not be credible; such an inference does not depend on whether either the prior statement or the subsequent in-court statement is true. *See United States v. Arteaga*, 117 F.3d 388, 397 n. 18 (9th Cir.) ("If a witness says 'X' on the stand, his out-of-court statement 'not-X' impeaches him, whether X is true or not."), *cert. denied*, —— U.S. ——, 118 S.Ct. 455, 139 L.Ed.2d 390 (1997). Therefore, because a declarant's prior inconsistent statement is not offered for its truth, it is not hearsay. *See id.* at 397.[1]

■■■■■ It is an entirely different matter to offer one declarant's statement to impeach the credibility of another witness. Merely offering a contradictory account offered by one witness does not go to another witness's credibility unless the first witness' account is offered as true. *See Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir.1995) ("Whereas an inconsistent statement by a testifying witness can be used to impeach that witness's credibility, an inconsistent account by another source is offered to show an alternative view of the truth."). Only the declarant of the prior inconsistent statement, and not another witness, may be impeached with the statement. *See United States v. Crouch*, 731 F.2d 621, 623 (9th Cir.1984) (holding

that hearsay statements are admissible to impeach a declarant who subsequently testifies at trial). In Bao's case, only if Bao's statement to the reporter is asserted as being true, thereby implying that the officer's and the interpreter's testimony is false, is Bao's statement relevant to impeach these witnesses' credibility. Thus, the statement would have been offered for the truth of the matter asserted therein— that Bao did not know his conduct was illegal—and it is inadmissible hearsay correctly excluded by the district court.[2]

## III.

## Application of Sentencing Guideline § 2B5.3

■■■■■ We review de novo the district court's interpretation of the Sentencing Guidelines, but review for abuse of discretion the district court's application of the Guidelines to the facts. *See United States v. Cooper*, 173 F.3d 1192, 1204 (9th Cir. 1999). The district court's factual findings in the sentencing phase are reviewed for clear error, *see id.*, but must be supported by a preponderance of the evidence, *see United States v. Nesenblatt*, 171 F.3d 1227, 1229 (9th Cir.1999).

■■■■ Sentencing Guideline § 2B5.3, "Criminal Infringement of Copyright or Trademark," provides that the base offense level for criminal infringement of a copyright is 6. *See* U.S.S.G. § 2B5.3(a). Once the district court finds that "the retail value of the infringing items exceeded $2,000," the court is directed to "increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)." § 2B5.3(b)(1). Thus, the district court was required to import calculations from the table in § 2F1.1 in order to de-

---

1. The Federal Rules of Evidence do provide that a prior inconsistent statement may be offered to establish the truth of its assertion if it was given under oath at a trial, hearing, or other proceeding, or in a deposition. *See* Fed.R.Evid. 801(d)(1)(A).

2. Bao also contends that his statement, which was in Vietnamese, should have been admitted because it contradicts his English confession and therefore leads to an inference that

the English confession may not be reliable. "Hearsay is admissible as substantive evidence only as provided by the Federal Rules of Evidence." *United States v. Armijo*, 5 F.3d 1229, 1233 (9th Cir.1993). Because no hearsay exception makes out-of-court statements in the declarant's native language admissible, we reject Bao's third ground for admission of his statement to the reporter.

termine how many levels upward to adjust Bao's sentence under § 2B5.3. The district court determined that the manuals had a value of $50 each. Under § 2F1.1, 5,000 manuals at $50 each resulted in an increase of 8 levels. *See* U.S.S.G. § 2F1.1(b)(1)(I). Bao contends that the manuals should have been valued at $12 each rather than $50, which would have resulted in an increase of 5 levels to Bao's base offense level. *See* U.S.S.G. § 2F1.1(b)(1)(F).

■ Section 2B5.3 speaks in terms of "retail value" while § 2F1.1 speaks in terms of "loss." The Background Commentary to § 2B5.3 provides that "the enhancement is based on the value of the infringing items, which will generally exceed the loss or gain due to the offense." Background Comment., § 2B5.3. Accordingly, the "retail value" of the manuals, not the "loss" derived from their production, is the proper measure for determining the sentencing enhancement applicable to Bao under § 2B5.3 and § 2F1.1. *See United States v. Cho*, 136 F.3d 982, 983–84 (5th Cir.1998) (finding that "retail value" and "loss" were distinguishable and that only the retail value should be used to determine the proper enhancement under the § 2F1.1 table when sentencing under § 2B5.3).

■ Further, the retail value of the counterfeit product, rather than the value of the genuine product, should be relied upon in determining the proper enhancement under § 2B5.3 and § 2F1.1. *See United States v. Kim*, 963 F.2d 65, 68 (5th Cir.1992) (finding that § 2B5.3's phrase "retail value of the infringing items" refers to the retail value of the counterfeited rather than the genuine merchandise). The retail value of the genuine merchandise may be relevant, however, in determining the retail value of the infringing items and serves as a ceiling price for counterfeit products whose value is not easily calculated. *See id.* at 69.

■ The government acknowledges that there was a readily-identifiable black market value of $50 for complete counterfeit Microsoft "Windows 95" packages that included the software on CD–Rom and a manual. The government contends that the manual's value cannot be separated out from the value of the whole package, and therefore contends that the manual itself should be assigned the value of $50. We reject this argument in light of government witness Auyang's testimony that comparable genuine manuals sold individually had a retail value of $12. While the manual printed by Bao may not have been sold separately, the manual's similarity to others sold independently by Microsoft provided an easy and fair method of assigning the manual an approximate retail value on its own. Because a genuine manual sold for $12, the retail value of the comparable counterfeit manual Bao was printing could not have exceeded $12. The district court clearly erred in assigning the value of $50 rather than $12 to each manual for purposes of sentencing.[3]

## IV.

The district court did not err or abuse its discretion in excluding Bao's exculpa-

---

**3.** The government contends that Bao should be accountable for the value of the entire counterfeit software package because he printed counterfeit CD-rom inserts and counterfeit product registration cards bearing prepaid postage stamps. The government refers us to the Application Notes to § 2F1.1 permitting a district court to use the "intended loss" if greater than the actual loss in applying the § 2F1.1 table. *See* Application Note 8, § 2F1.1. The government contends that § 2F1.1 thus permits the district court to enhance Bao's sentence based on the "intended

loss," or the intended retail value, of the whole software package.

We need not reach the government's argument that the Application Notes control in addition to the § 2F1.1 table itself in calculating Bao's sentence under § 2B5.3 such that the "intended retail value" of the whole software package should be factored in. *Compare Cho*, 136 F.3d at 984 (§ 2B5.3's reference to table in § 2F1.1 does not permit incorporation of entire offense guideline), *with United States v. Sung*, 51 F.3d 92, 95 (7th Cir.1995) ("Trying to separate the table in

tory statement to the reporter as inadmissible hearsay; consequently, Bao's conviction is affirmed. The district court, however, committed clear error in determining that the manuals should be valued at $50 each rather than $12 each. We therefore vacate Bao's sentence and remand for resentencing.

**AFFIRMED in part, VACATED and REMANDED in part.**

§ 2F1.1 from that section's notes would be a bootless exercise."). Even if the district court could calculate a sentence based on the intended retail value of a counterfeit product, the government must first satisfy its burden of proving by a preponderance of the evidence the facts necessary to enhance a defendant's offense level. *See United States v. Neill,* 166 F.3d 943, 949 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999). The government did not show that it was reasonably foreseeable to Bao that counterfeit software packages were the ultimate goal of the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Palomba,* 182 F.3d 1121, 1123–24 (9th Cir. 1999). In Bao's case the government did not show that he had the requisite knowledge concerning the Microsoft CD–Rom packages. Further, the Presentence Report notes that "Bao was not aware of the scope of the enterprise nor of the activities of others involved in the enterprise." The district court agreed during the sentencing hearing, finding that Bao was eligible for a two-level downward departure because he was "not sophisticated in the ways of counterfeiting or understanding licensing," and he was "at the bottom of the chain" in the conspiracy. It would be at odds with these findings to attribute the value of the complete "Windows 95" package to Bao for purposes of sentencing. *See United States v. Melton,* 131 F.3d 1400, 1406–07 (10th Cir.1997) (finding that because it was not reasonably foreseeable to minor participant in conspiracy that scheme was intended to produce $30 million in counterfeit currency, it was clear error to use this $30 million figure in assigning his offense level under § 2F1.1 table).