252 F.3d 91 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, APPELLEE-CROSS-APPELLANT,
v.
EUGENIUSZ KOCZUK, WIESLAW ROZBICKI, DEFENDANTS-APPELLANTS-CROSS-APPELLEES, ANDRZEJ LEPKOWSKI, AKA ANDRZEJ LEPLOWSKI, DEFENDANT.
 Docket No. 00-1504(L)
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: April 6, 2001
Decided May 21, 2001
 
 Following a jury trial, appellants were convicted in the United States District Court for the Eastern District of New York (Frederic Block, Judge) on various counts of illegally smuggling sturgeon roe, or caviar, into the United States. Appellants challenge their convictions on appeal, and the Government cross-appeals the District Court's decision to depart downward from the Sentencing Guidelines.
 Sentences vacated and cause remanded for resentencing.
 Andrew B. Bowman, Westport, Ct, for Defendant-Appellant-Cross-Appellee Eugeniusz Koczuk.
 Roger Bennet Adler (Faith A. Friedman, on the brief), Roger Bennet Adler, P.C., New York, N.Y., for Defendant-Appellant-Cross-Appellee Wieslaw Rozbicki.
 Cynthia Monaco, Assistant United States Attorney (Loretta E. Lynch, United States Attorney, on the brief; Peter A. Norling, Assistant United States Attorney, of counsel), United States Attorney's Office for the Eastern District of New York, Brooklyn, N.Y., for Appellee-Cross-Appellant United States.
 Before: Kearse, Cabranes, and Katzmann, Circuit Judges.
 
 Jose A. Cabranes, Circuit Judge
 
 1
 Appellants Eugeniusz Koczuk and Wieslaw Rozbicki were convicted in the United States District Court for the Eastern District of New York (Frederic Block, Judge) on various counts of illegally smuggling sturgeon roe, or caviar, into the United States. Appellants challenge their convictions on appeal, and the Government cross-appeals the District Court's decision to depart downward from the Sentencing Guidelines. In a separate summary order filed today, we address the merits of appellants' challenge and affirm the District Court's judgment with respect to all issues raised therein. In this opinion, we address only the Government's claim on cross-appeal concerning the downward departure. Because we conclude that the District Court departed downward for erroneous reasons, we vacate appellants' sentences and remand for resentencing.
 
 I. Background
 
 2
 The United States and Russia are parties to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES" or "Convention"), opened for signature Mar. 3, 1973, 27 U.S.T. 1087, a multilateral treaty designed to protect "certain species of wild fauna and flora against over-exploitation through international trade," CITES, pmbl., 27 U.S.T. at 1090. See generally CITES Secretariat, List of Parties, at http://www.cites.org/CITES/common/parties/chronolo.shtml (last modified Sept. 7, 2000) (providing a list of CITES members and their date of entry). CITES establishes a regulatory system that monitors the trade of certain wildlife passing from one member country to another. Protected wildlife are listed in one of three appendices according to the level of protection required. Species in Appendix II can be traded only with an export permit from the country of origin. See CITES art. IV, para. 2, 27 U.S.T. at 1095.
 
 
 3
 Because CITES is not self-executing, Congress implemented CITES through the Endangered Species Act of 1973, see 16 U.S.C. § 1538(c), and directed the Fish and Wildlife Service of the Department of the Interior to carry out the provisions of the Convention, see 16 U.S.C. §§ 1537a, 1540(f). Pursuant to this direction, the Fish and Wildlife Service has issued regulations incorporating the specific terms of CITES, see 50 C.F.R. pt. 23, and has also undertaken the responsibility of developing the United States's policy position at the roughly biennial CITES Conference of the Parties, see, e.g., 62 Fed. Reg. 18559, 18559 (1997).
 
 
 4
 In December 1996, the Fish and Wildlife Service announced that the United States intended to co-sponsor a proposal by Germany to amend Appendix II of CITES to include all species of sturgeon not already protected by CITES. See 61 Fed. Reg. 67293, 67294 (1996). After receiving comments from various parties, the Fish and Wildlife Service continued as planned and submitted the proposal at the Tenth Conference of the Parties held in Zimbabwe in June 1997. The members of CITES approved of the proposal,[1] and the listing became effective on April 1, 1998. The Fish and Wildlife Service subsequently amended its regulations to reflect the new listing, see 63 Fed. Reg. 63210, 63211 (1998) (amending 50 C.F.R. § 23.23), which was widely and publicly announced.[2]
 
 
 5
 After April 1, 1998, therefore, it was unlawful for any person to import sturgeon into the United States without first obtaining a CITES permit from the country of origin. See 50 C.F.R. § 23.12(a)(2)(i). Violators could be prosecuted under the federal anti-smuggling statute, 18 U.S.C. § 545, which makes it a crime to knowingly import goods contrary to law, and the Lacey Act, 16 U.S.C. § 3372, which makes it unlawful to transport wildlife in violation of federal, state, or foreign law. See United States v. Mitchell, 39 F.3d 465, 470-71 (4th Cir. 1994) (holding that 18 U.S.C. § 545 reaches conduct contrary to Fish and Wildlife Service regulations that have the force and effect of law).
 
 
 6
 By indictment returned on December 17, 1998, Koczuk and Rozbicki were charged with importing, between April 1, 1998 and November 3, 1998, approximately 19,000 pounds of sturgeon roe into the United States from Russia without the required CITES permit. After a three-week trial, a jury found Koczuk guilty of one count of conspiring to smuggle sturgeon roe into the United States, in violation of 18 U.S.C. § 371; one count of smuggling sturgeon roe, in violation of 18 U.S.C. § 545; and four counts of unlawfully importing sturgeon roe, in violation of the Lacey Act. The jury found Rozbicki guilty of one count of violating the Lacey Act for his participation in a smuggling scheme that occurred on October 20, 1998.
 
 
 7
 At Koczuk's sentencing, the District Court applied a base offense level of six for offenses involving endangered fish, a two-level increase for pecuniary gain, and a fifteen-level increase for the retail value of the smuggled caviar, which the District Court found to be over $11 million. See U.S.S.G. § 2Q2.1 (1998).[3] It applied another four-level enhancement for Koczuk's leadership role, see id. § 3B1.1(a), and a two-level enhancement for obstruction of justice, see id. § 3C1.1. Koczuk's total adjusted offense level was therefore 29, which yielded a sentencing range of 87 to 108 months because the District Court determined that Koczuk's Criminal History Category was one, see id. § 5A.
 
 
 8
 The District Court, however, departed downward for three reasons. First, it found that the fifteen-level enhancement based on the retail value of the smuggled goods overstated the seriousness of the offense. Section 2Q2.1(b)(3)(A) of the Sentencing Guidelines, which concerns offenses involving endangered fish, instructs a sentencing court to "increase the offense level by the corresponding number of levels from the table in § 2F1.1 [of the Guidelines] (Fraud and Deceit)" if the market value of the fish exceeds $2,000. U.S.S.G. § 2Q2.1(b)(3)(A). The District Court noted that the table in Section 2F1.1, which is also used to enhance offense levels for crimes of fraud and deceit, is based on the economic "loss" resulting from those crimes. In the District Court's view, appellants' conduct did not result in any discernable economic "loss." As it explained, "this does not appear to be a case where there is any demonstrative loss similar to what you would have in a prototypical fraud case." It was therefore "trouble[d]" that it had to use the prescribed table, but nonetheless felt compelled to do so. During a Fatico hearing to establish the amount of loss, a Fish and Wildlife agent testified that the members of CITES listed sturgeon in Appendix II in part to assist Russia's failing economy. This testimony led the District Court to conclude that appellants' crimes resulted in, at most, "a loss to the Russian government of some conceptual nature." Because, in the District Court's view, appellants' conduct did not lead to any actual economic loss, and any arguable loss to the Russian government could not have been contemplated by the Sentencing Commission, the Court held that the fifteen-level enhancement overstated the seriousness of the offense.
 
 
 9
 Second, the District Court found that the illegal importation of sturgeon roe fell outside the "heartland" of cases involving endangered species. See generally Koon v. United States, 518 U.S. 81, 98 (1996) ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."). According to the District Court, most endangered-species statutes completely prohibit the importation of a class of wildlife, but the statutes at issue here merely regulate the importation of sturgeon. Moreover, in the District Court's view, part of the reason for placing sturgeon under the protection of CITES was to help Russia's economy. The District Court held that these differences were sufficient to place Koczuk's offenses outside the heartland of cases that the Sentencing Commission could arguably have contemplated in adopting Section 2Q2.1 of the Guidelines.
 
 
 10
 Third and finally, the District Court noted that Koczuk was suffering from uncontrolled diabetes, and that his wife was experiencing post-traumatic stress from Koczuk's legal troubles. Although the District Court explained that these conditions alone were insufficient to warrant a downward departure, it found that they were adequate to support such a decision when taken in combination with the other two bases for departure. Accordingly, it departed downward and sentenced Koczuk principally to 20 months' imprisonment, to be followed by 3 years of supervised release.
 
 
 11
 The District Court used similar reasoning in sentencing Rozbicki: It applied a base offense level of six for offenses involving endangered fish, a two-level enhancement for pecuniary gain, and a fifteen-level enhancement for the $11 million retail value of the smuggled caviar, see U.S.S.G. § 2Q2.1 (1998), as well as a two-level enhancement for obstruction of justice, see id. § 3C1.1. However, it afforded Rozbicki a four-level reduction for his minimal participation in the smuggling scheme. See id. § 3B1.2(a). Rozbicki's adjusted offense level was therefore 21, which, in his Criminal History Category of one, yielded a sentencing range of 37 to 46 months. See id. § 5A. The District Court departed downward, however, because it determined that Rozbicki's participation in the conspiracy was minimal to a degree not contemplated by the Guidelines, and because of its earlier ruling that the Guidelines overstated the seriousness of the offense. As a result, Rozbicki was sentenced principally to five months' detention, to be followed by two years of supervised release.
 
 
 12
 On cross-appeal, the Government argues that the District Court erred in holding that the Guidelines overstated the seriousness of the offense, and in holding that appellants' crimes fell outside the "heartland" of cases in Section 2Q2.1. The Government contends that the District Court's downward departure was based on these holdings and, therefore, urges us to vacate appellants' sentences and remand the cause for resentencing.
 
 II. Discussion
 A. Standard of Review
 
 13
 A district court has discretion to sentence below the range specified by the Guidelines if it determines that there is a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); accord U.S.S.G. § 5K2.0. The Guidelines explain, however, that "[i]n the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. § 5K2.0, cmt. "[D]issatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." Id.
 
 
 14
 A district court's decision to depart downward is reviewed for abuse of discretion. See Koon, 518 U.S. at 99-100. The question of whether a given circumstance is a permissible basis for departure, however, is a question of law, and a "district court by definition abuses its discretion when it makes an error of law." Id. at 100; accord United States v. Bonnet-Grullon, 212 F.3d 692, 700 (2d Cir.), cert. denied, 121 S. Ct. 261 (2000).
 
 
 15
 B. Overstatement of the Seriousness of the Offense
 
 
 16
 In the case at hand, the District Court departed downward in large part because it found that the market value of the smuggled roe overstated the seriousness of the offense. The District Court arrived at this conclusion, however, by erroneously assuming that the seriousness of appellants' offenses should be measured by the economic "loss" caused by those offenses.
 
 
 17
 The enhancement provision in Section 2Q2.1 instructs a sentencing court to base the enhancement on the market value or the fair-market retail price of the endangered species involved, not on the economic loss caused by an offense. See United States v. Borden, 10 F.3d 1058, 1063 (4th Cir. 1993) (using the market value to determine the appropriate enhancement); United States v. Eyoum, 84 F.3d 1004, 1007 (7th Cir. 1996) (using the fair-market retail price to determine the enhancement); see also U.S.S.G. § 2Q2.1, application note 4 ("When information is reasonably available, 'market value' under subsection (b)(3)(A) shall be based on the fair-market retail price."). The District Court incorrectly concluded that, by directing courts to use the table in Section 2F1.1, the enhancement provision incorporated the concept of "loss" mentioned in Section 2F1.1.
 
 
 18
 We find instructive the Fifth Circuit's decision in United States v. Cho, 136 F.3d 982 (5th Cir. 1998). In that case, a defendant was found guilty of trafficking in counterfeit merchandise and was sentenced under Section 2B5.3 of the Guidelines, which concerns the criminal infringement of copyrights and trademarks. Section 2B5.3 contains an enhancement provision almost identical to the one here: It directs courts to increase a defendant's offense level "by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)" if the retail value of the infringing items exceeds $2,000. U.S.S.G. § 2B5.3(b)(1) (1998).[4] The defendant in Cho argued that the reference to the Fraud and Deceit table in Section 2F1.1 incorporated the concept of "loss" in that Section, and, therefore, her enhancement should be based on the loss incurred by the victim of her crime rather than on the retail value of the infringing item. See Cho, 136 F.3d at 984. The Fifth Circuit rejected this argument. It held that Section 2B5.3(b)(1) only referred to the table in Section 2F1.1 and did not incorporate Section 2F1.1's concept of "loss"; accordingly, sentencing under Section 2B5.3 depended only on the retail value of the infringing item and not on the loss incurred by others. See id.
 
 
 19
 We believe that similar reasoning applies here. Section 2Q2.1(b)(3)(A) provides that the offense level should be increased "by the corresponding levels from the table in § 2F1.1 (Fraud and Deceit)." U.S.S.G. § 2Q2.1(b)(3)(A) (1998) (emphasis added). The reference to the table in Section 2F1.1 does not incorporate Section 2F1.1's reliance on "loss" to calculate the appropriate enhancement in fraud and deceit cases or, as Koczuk argues, the application notes of Section 2F1.1.[5] See id. § 1B1.5(b)(2) ("An instruction to use a particular... table from another offense guideline refers only to the particular... table referenced, and not to the entire offense guideline."). Under Section 2Q2.1(b)(3)(A), a sentencing court is to use only the table in Section 2F1.1 to enhance the offense level, and this enhancement must be based on the market value or the fair-market retail price of the endangered species involved. In these circumstances, the District Court should not have been concerned with the economic loss resulting from appellants' conduct. By directing a sentencing court to use the market value of the endangered species, the Sentencing Commission made the decision that this value is the best measure of the seriousness of the offense. Accordingly, insofar as the District Court departed downward because it found no economic loss or, at most, "a loss to the Russian government of some conceptual nature," we hold that this was error.
 
 
 20
 C. Outside the "Heartland"
 
 
 21
 We are also unpersuaded by the District Court's stated reasons for holding that this case falls outside the "heartland" of cases concerning offenses involving fish and wildlife. See generally Koon, 518 U.S. at 98; United States v. Broderson, 67 F.3d 452, 458 (2d Cir. 1995) (explaining that a downward departure is warranted only if it falls outside the "heartland" of typical cases that each guideline describes). The District Court provided two reasons for why this case is unusual: (1) the importation of sturgeon roe is merely "regulated" rather than "prohibited"; and (2) part of the reason why sturgeon was placed under the protection of CITES was to assist Russia's economy. These reasons, however, do not provide a sufficient basis for an outside-the-heartland departure.
 
 
 22
 As we have explained, "[t]he determination of whether a case is within the heartland of the applicable guideline cannot be a matter of generalization." Bonnet-Grullon, 212 F.3d at 700. "Rather, that determination requires a comparison of the particular facts of the case against the class of cases typically within that guideline." Id. Here, the District Court did not analyze the particular facts of appellants' case and compare them with those of other cases that typically fall within Section 2Q2.1. Instead, it carved out a general exception to Section 2Q2.1 for all cases involving the illegal importation of sturgeon roe. In a sense, the District Court departed downward precisely because sturgeon roe was involved. This was a legal error or, in the unhappy nomenclature of the law, an abuse of discretion.
 
 
 23
 A sentencing court cannot depart downward because it finds that an entire class of offenses, defined by regulation and treaty, is outside the "heartland" of a guideline. It is for Congress and the Sentencing Commission-not the courts-to decide whether such a class of offenses should be placed in a particular guideline. In the case at hand, Congress delegated to the Fish and Wildlife Service the quasi-legislative authority to promulgate regulations to implement and enforce the provision of CITES. See 16 U.S.C. §§ 1537a, 1540(f); see also Mitchell, 39 F.3d at 471. Acting under this authority, the Fish and Wildlife Service moved to protect sturgeon roe by listing it in Appendix II of CITES, and amended its regulations to reflect the new listing. In making these decisions, the Fish and Wildlife Service effectively determined that those who illegally import this product should be sentenced under Section 2Q2.1, which has governed the sentencing for violations of 18 U.S.C. § 545 and the Lacey Act since 1989, see U.S.S.G. app. C, amend. 209. Cf. South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 351 (1998) ("[W]e assume that Congress is aware of existing law when it passes legislation." (citation omitted)). To depart downward merely because sturgeon roe is involved is to undermine this determination-one that Congress has explicitly and carefully committed to the judgment of the Fish and Wildlife Service.
 
 
 24
 Moreover, we note that the limitation on the importation of sturgeon roe is not significantly different from the restrictions placed on the importation of other endangered species. Many endangered-species statutes take into account interests other than preservation of species, and authorize federal authorities to issue permits so that people can legally take, possess, and import various categories of protected wildlife. See, e.g., 16 U.S.C. § 668a (authorizing the Secretary of the Interior to promulgate regulations for the taking of bald and golden eagles for certain scientific and religious purposes); 16 U.S.C. § 704(a) (authorizing the Secretary of the Interior to prescribe regulations for when and how migratory birds may be taken, killed, or possessed); 16 U.S.C. § 1153 (permitting certain Indians, Aleuts, and Eskimos to hunt seals for subsistence purposes); 16 U.S.C. § 1374(a) (authorizing the Secretary of Commerce to issue permits for the taking and importation of marine mammals); 16 U.S.C. § 1539 (allowing the Fish and Wildlife Service to issue permits for the taking of species protected under the Endangered Species Act). Each of these provisions represents an attempt to balance the goal of species protection against competing societal and economic interests; the limitation on the importation of sturgeon roe under CITES is no different. A downward departure is not warranted merely because, in protecting sturgeon, the United States government may have considered additional or different interests-including, for example, the vitality of the Russian economy-that it did not consider in protecting other endangered species. Accordingly, we hold that the District Court erred in departing downward on this basis.
 
 III. Conclusion
 
 25
 To summarize: we hold that, in sentencing appellants, the District Court relied on several erroneous bases for departing downward. Because we cannot conclude that the District Court would have departed downward without relying on these erroneous grounds, we vacate appellants' sentences and remand the cause for resentencing. On remand, the District Court is free to consider whether a downward departure may be appropriate for other reasons.
 
 
 
 NOTES:
 
 
 [1]
 An amendment to Appendix II of CITES must be approved by two-thirds of the signatory parties present and voting at the CITES conference. See CITES art. XV, para. 1(b), 27 U.S.T. at 1110. According to testimony before Congress, the only country participating at the Tenth Conference to voice objection to the listing of sturgeon was Iran. See CITES Conference of the Parties Summary Reports: Trade in Endangered Flora and Fauna Oversight Hearing, Congressional Testimony by Federal Document Clearing House (July 17, 1997), available at 1997 WL 11234968.
 
 
 [2]
 See, e.g., Marla Cone, Environmental Summit OKs Severe Restrictions on Caviar, L.A. Times, June 19, 1997, at A4; Tim Friend, Caviar Imports Face U.S. Scrutiny, Permits, USA Today, Mar. 26, 1998, at 10D; Tim Friend, Netting Fishy Business in Caviar Trade, USA Today, Mar. 31, 1998, at 6D; Kenneth Howe, California Caviar Clash: Roe Farmers Feel Rules to Protect Species Is Burden, S.F. Chron., Aug. 29, 1997, at B1; Owen Matthews, Beluga Bandits, Newsweek, June 15, 1998, at 28; Larry McShane, Environmentalists: World's Supply of Caviar Threatened, Associated Press, Mar. 25, 1998.
 
 
 [3]
 Section 2Q2.1 of the Sentencing Guidelines provides in relevant part: § 2Q2.1. Offenses Involving Fish, Wildlife, and Plants (a) Base Offense Level: 6 (b) Specific Offense Characteristics (1) If the offense (A) was committed for pecuniary gain or otherwise involved a commercial purpose; or (B) involved a pattern of similar violations, increase by 2 levels. (2).... (3).... (A) If the market value of the fish, wildlife, or plants exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit);.... U.S.S.G. § 2Q2.1 (1998).
 
 
 [4]
 Section 2B5.3 of the Sentencing Guidelines provides: § 2B5.3. Criminal Infringement of Copyright or Trademark (a) Base Offense Level: 6 (b) Specific Offense Characteristic (1) If the retail value of the infringing item exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit). U.S.S.G. § 2B5.3 (1998).
 
 
 [5]
 Application note 11 of Section 2F1.1, which appellants invoke, provides in relevant part: In a few instances, the loss determined under section (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted. Section 2Q2.1 does not contain a similar application note. Indeed, the only application note in Section 2Q2.1 that suggests that a departure may be appropriate is one that provides for an upward departure if "the offense involved the destruction of a substantial quantity of fish, wildlife, or plants, and the seriousness of the offense is not adequately measured by the market value." U.S.S.G. § 2Q2.1, application note 5.