**UNITED STATES of America**

v.

**Eugeniusz KOCZUK and Wieslaw Rozbicki, Defendants.**

**No. 98–CV–1140.**

United States District Court,
E.D. New York.

Oct. 10, 2001.

Alan Vinegrad, United States Attorney by Cynthia M. Monaco, Brooklyn, NY, for the United States of America.

Roger B. Adler, Roger Bennet Adler, P.C., New York City, for Defendant.

1. Sentence is deemed imposed "on the date of oral pronouncement, rather than the date judgment is entered." *United States v. Abreu–Cabrera,* 64 F.3d 67, 73 (2d Cir.1995). Notice of appeal "must be filed within ten days of the later of the entry of a judgment or entry of an

## MEMORANDUM

BLOCK, District Judge.

This case was remanded for resentencing of each defendant. *See United States v. Koczuk,* 252 F.3d 91 (2d Cir.2001). Defendant Wieslaw Rozbicki ("Rozbicki") was orally resentenced in open court on August 16, 2001, at which time the Court informed the parties that this memorandum would follow.[1] Defendant Eugeniusz Koczuk ("Koczuk") has not yet been resentenced.

### I

The defendants were each indicted on one count of conspiring to smuggle caviar into the United States, in violation of 18 U.S.C. § 371 (Count One); one count of smuggling caviar, in violation of 18 U.S.C. § 545 (Count Two), and four counts of unlawfully importing caviar on discrete dates—September 30, 1998 (Count Three); October 12, 1998 (Count Four); October 16, 1998 (Count Five); October 20, 1998 (Count Six), in violation of the Lacey Act, 16 U.S.C. § 3372. After a jury trial, Koczuk was convicted on all counts; however, Rozbicki was only found guilty on Count Six, charging him with unlawfully importing caviar on October 20, 1998. He was acquitted on all other counts.

Koczuk was first to be sentenced. As a consequence of being convicted on all counts, he was held accountable for the retail value of all the caviar he was responsible for smuggling into the country, which the Court determined to be approximately 11 million dollars. This sum required a fifteen-level increase, calculated under the Fraud and Deceit Table in U.S. Sentencing Guidelines Manual ("Guidelines") § 2F1.1, over the base offense level of six set forth in Guidelines § 2Q2.1, applicable to all offenses involving fish, wildlife and plants.[2]

order disposing of post-trial motions, *see* Fed. R.App.P 4(b)." *Id.* The written Judgment and Commitment is simultaneously being entered herein.

2. Guidelines § 2Q2.1 requires, as a Specific Offense Characteristic, that if the market val-

After being given a four-level enhancement for his leadership role, *see id.* § 3B1.1 (a), and a two-level enhancement for obstruction of justice, *see id.* § 3C1.1, Koczuk's sentencing range, with a Criminal History Category of one, came to 87–108 months. The Court downwardly departed to 20 months imprisonment because, *inter alia*, it determined that the fifteen-level enhancement under the Fraud and Deceit Table overstated the seriousness of the offense, and that Application Note 11 to the Fraud and Deceit Guideline authorized a departure for that reason.

As for Rozbicki, the market value of the caviar attributable to his one count of conviction, as set forth in the Presentence Report, was less than $100,000, based upon the quantity of caviar that he was found to have brought into the United States on October 20th on a plane from Poland. Nonetheless, the Court found, as relevant conduct under Guidelines § 1B1.3, that Rozbicki was also responsible for caviar carried by two other passengers on that plane, for a collective value of $246,000. Of far greater impact on Rozbicki's sentence, the Court further determined, under the constraints of relevant conduct, that Rozbicki also had to be held accountable for the full value of the multimillions of dollars of caviar attributable to Koczuk, even though Rozbicki, unlike Koczuk, had been acquitted of all criminal charges (including the conspiracy count), other than the October 20th importation. Thus, both Rozbicki and Koczuk were subject to the same fifteen-level increase under the Fraud and Deceit Table. Put another way, the acquittals made no difference in the calculation of Rozbicki's sentencing range. All relevant conduct findings were made by the preponderance of the evidence standard.

Rozbicki's sentence was assuaged to the extent that the Court found that his role in the smuggling scheme was qualitatively different from Koczuk's because Rozbicki was merely Koczuk's employee, essentially functioning as his driver and interpreter; accordingly, he was afforded a four-level reduction for minimal participation. *See id.* § 3B1.2(a). With enhancements for pecuniary gain and obstruction of justice, and a Criminal History Category of one, Rozbicki's guideline range came to 37–46 months. The Court downwardly departed to five months incarceration. Consistent with its departure ruling regarding Koczuk, the Court once again determined that it had the power to depart under Application Note 11 of § 2F1.1 if it found, as it did, that the fifteen-level enhancement under the Fraud and Deceit Table overstated the seriousness of Rozbicki's criminal conduct. It further determined, in support of the departure, that Rozbicki's participation in the crimes was minimal to a degree not contemplated by the Guidelines.

Both defendants, as well as the government, appealed. In a summary order, the Circuit Court affirmed the convictions and rejected that part of the government's appeal challenging Rozbicki's four-level minimal role reduction. *See United States v. Koczuk*, 252 F.3d 91 (2d Cir.2001). In that regard, the Circuit Court noted: "The record supports a finding that Rozbicki was a low-level employee who primarily took orders from Koczuk. It also provides a basis to conclude that Rozbicki was making a small sum of money each week for his services and was not actively involved in Koczuk's caviar business." *Id.* at 7. The Circuit Court addressed the sentence remand in a written opinion, concluding, *inter alia*, that it was improper for the

---

ue of the fish, wildlife or plants exceeded $2,000, the offense level must be increased "by the corresponding number of levels from the table in 2F1.1." Guidelines § 2Q2.1(b)(3)(A).

District Court to consider as one of its reasons for departing that the Fraud and Deceit Table overstated the seriousness of the defendants' respective conduct. It understood the District Court's reason in that regard as impermissibly being predicated on the absence of economic loss, and further held that only the Fraud and Deceit Table, and not the Fraud and Deceit Application Note, was applicable under Guidelines § 2Q2.1. *See Koczuk*, 252 F.3d at 97–98. The Circuit Court noted that "[o]n remand, the District Court is free to consider whether a downward departure may be appropriate for other reasons." *Id.* at 99.

At Rozbicki's resentence, the Court again downwardly departed, sentencing Rozbicki principally to a year and a day, followed by two years of supervised release. In doing so, it relied, *inter alia*, on two discrete bases for downward departure when the sentencing range is driven in the main by relevant conduct. One such basis pertained exclusively to relevant conduct in respect to charges for which a defendant, as in this case, had been acquitted. Because of the absence of any recognition by the Second Circuit distinguishing between acquitted conduct and uncharged conduct in assessing relevant conduct downward departures, the Court has decided to pen this memorandum.[3]

## II

The sentencing of a defendant under the Guidelines to the same term of imprisonment regardless of whether the defendant stands convicted or acquitted has triggered a spate of criticism by the courts and academic commentators. *See United States v. Watts*, 519 U.S. 148, 164 n. 3, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (dissenting opinion) (collecting authorities); *Unit-*

ed *States v. Baylor*, 97 F.3d 542, 549 n. 1 (D.C.Cir.1996) (concurring opinion) (collecting authorities). Perhaps the most damning judicial condemnation has been articulated by Judge Wald in his concurring opinion in *Baylor*, referring to "the use of acquitted conduct in an identical fashion with convicted conduct" as leaving "a jagged scar on our constitutional complexion," 97 F.3d at 550, and echoing Judge Newman's entreaty that "the law must be modified." *Id.* (quoting *United States v. Concepcion*, 983 F.2d 369, 396 (2d Cir.1992) (Newman, J., dissenting from denial of request for rehearing *en banc* )). Nonetheless, Judge Wald was constrained to acknowledge that all but the Ninth Circuit had as of that date ruled that "the guidelines and the law authorizing their creation permit such use [of acquitted conduct], and that this practice is constitutional." *Id.* at 549.

■ Soon after *Baylor*, the Supreme Court in *Watts* resolved the circuit split created by the Ninth Circuit to the extent of holding that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157, 117 S.Ct. 633 (per curiam). Nonetheless, *Watts* hardly put the debate to rest. As Justice Kennedy noted in dissent: "At the least it ought to be said that to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal, concerns noted by Justice STEVENS and the other federal judges to whom he refers in his dissent." *Id.* at 170, 117 S.Ct. 633 (Kennedy, J., dissenting). He further observed that

---

**3.** In reviewing the resentencing minutes, the Court is not satisfied that it explicitly recognized the distinction between acquitted and uncharged conduct; hence, the additional need for this memorandum.

"the effect of the Sentencing Reform Act of 1984 on this question deserves careful exploration," as illustrated by the fact that Justices Scalia and Breyer "each [found] it necessary to issue separate opinions setting forth differing views on the role of the Sentencing Commission." *Id.*

As part of the unsettling landscape, the *per curiam* majority opinion in *Watts* did acknowledge that although "application of the preponderance standard at sentencing generally satisfies due process," there was "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *Id.* at 156, 117 S.Ct. 633. The Court chose not to address that issue since it did not believe that the facts in that case presented "such exceptional circumstances." *Id.* at 157, 117 S.Ct. 633. Curiously, in so identifying this unresolved issue, the Court did not prescind between uncharged and acquitted relevant conduct, which undoubtedly contributed to Justice Kennedy's observation that "[a]t several points the *per curiam* opinion shows hesitation in confronting the distinction between uncharged conduct and conduct related to a charge for which the defendant was acquitted. The distinction ought to be confronted by a reasoned course of argument, not by shrugging it off." *Id.* at 170, 117 S.Ct. 633 (Kennedy, J., dissenting).

The Supreme Court in *Watts* collated the holdings of those circuit courts which had weighed in on the issue of the evidentiary standard to be employed in assessing relevant conduct. *See id.* at 157 n. 2, 117 S.Ct. 633. In that regard, it recognized that the Second Circuit in *United States v. Gigante,* 94 F.3d 53 (2d Cir.1996), although "not reaching the due process issue," formulated the following test for upward adjustments and upward departures: "[T]he preponderance standard is no more than a

*threshold* basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures." *Watts,* 519 U.S. at 157 n. 1, 117 S.Ct. 633 (quoting *Gigante,* 94 F.3d at 56). The Second Circuit in *Gigante* also addressed the concept of downward departures, commenting: "Where a higher standard appropriate to a substantially enhanced sentence range is not met, the court should depart downwardly. Because the risk of factual error in a series of adjustments, each of which involves conduct proven by a bare preponderance, is a circumstance present at least 'to a degree' not adequately considered by the Commission, *see* 18 U.S.C. § 3553(b), a downward departure would be warranted." *Gigante,* 94 F.3d at 56. The court did not believe any downward departure would be warranted in that case because it perceived the evidence of the relevant conduct, even under the most heightened possible standard, as overwhelming.

■ The relevant conduct at issue in *Gigante* was uncharged conduct, and the Second Circuit has recently cited to *Gigante* as one of three cases standing for the proposition "that a sentencing court may depart downward where findings as to *uncharged* relevant conduct made by the sentencing court based on a preponderance of the evidence substantially increase the defendant's sentence under the Sentencing Guidelines." *United States v. White,* 240 F.3d 127, 137 (2d Cir.2001) (citing *Gigante,* 94 F.3d 53; *United States v. Cordoba–Murgas,* 233 F.3d 704 (2d Cir. 2000); and *United States v. Concepcion,* 983 F.2d 369 (2d Cir.1992)) (emphasis added). Each of the other two cited cases is instructive.

In *Cordoba–Murgas,* a case also involving uncharged relevant conduct, the court

flatly rejected any notion that relevant conduct is to be assessed under a higher standard than the preponderance of the evidence even if it significantly increases the Guidelines sentencing range. In keeping with the holding in *Gigante* that the district court should depart downwardly "[w]here a higher standard appropriate to a substantially enhanced sentence range is not met," 233 F.3d at 708 (quoting *Gigante,* 94 F.3d 53), it then formulated the following circumstances which in combination would be sufficiently extraordinary to warrant a downward departure: "(i) an enormous upward departure adjustment (ii) for uncharged conduct (iii) not proved at trial and (iv) found only by a preponderance of the evidence, (v) where the court has substantial doubts as to the accuracy of the finding." 233 F.3d at 709.[4] Notably, the formulation speaks only to uncharged conduct. However, the court cited to *Concepcion,* as well as to *Gigante,* as support for that part of the formulation requiring a finding of enormous relevant conduct, commenting, in regard to *Concepcion,* that the court there held that "the district court retains discretion to downwardly depart where the sentence would be dramatically increased by reason of the unconvicted relevant conduct." *Id.* (citing *Concepcion,* 983 F.2d at 389).

Notably, although the Circuit Court in *White* references *Cordoba Murgas, Gigante* and *Concepcion* as "authority to depart from a sentence based in large part on relevant conduct," 240 F.3d at 137, only *Concepcion* entailed *acquitted* conduct. The discrete holding in *Concepcion* focused only on excessiveness, and arguably could be read as warranting downward departures whenever acquitted relevant conduct results in an extreme increase in the Guidelines range. *See Concepcion,* 983

F.2d at 389 ("[W]e doubt that, with respect to conduct of which the defendant was acquitted, the Commission intended so extreme an increase."). However, none of the cases comprising this quartet of Second Circuit precedents directly "confront[s] the distinction between uncharged conduct and conduct related to a charge for which the defendant was acquitted." *Watts,* 519 U.S. at 170, 117 S.Ct. 633 (Kennedy, J., dissenting). As Justice Kennedy suggests, "[t]he distinction ought to be confronted by a reasoned course of argument." *Id.* In this Court's view, the distinction should at least be recognized in the context of downward departures. Acquitted conduct should stand on a separate footing from uncharged conduct for downward departure purposes since a verdict of acquittal "proves the existence of a reasonable doubt as to [a defendant's] guilt." *Id.* at 155, 116 S.Ct. 2074 (internal citation and quotation omitted) (per curiam). By accepting the jury's verdict to that extent, a rational balance would be struck between affording some credence to the jury's verdict without compromising the obligation of the sentencing court to account for relevant conduct by the preponderance of the evidence.

The Court accordingly believes that where relevant *acquitted* conduct produces the same sentencing result as if the defendant had been convicted of that conduct, or significantly increases the Guidelines range, downward departure invariably is warranted. Where, however, relevant *uncharged* conduct is entailed, the authority to depart would continue to be governed by the nonexclusive factors set forth in *Cordoba Murgas.* The extent of all departures in either situation will vary with the particular circumstances of each case and,

---

**4.** Notwithstanding the reference to "upward departure," the Court understands the first three circumstances to simply be speaking to significantly enhanced sentencing ranges based upon uncharged relevant conduct.

as in all departure scenarios, would be "largely left to the sentencing court's discretion." *Cordoba Murgas*, 233 F.3d at 709.

■ In the present case, given that the same fifteen-level enhancement would have applied even if Rozbicki had been convicted of all six counts, the Court held that this was a sufficient and discrete basis for downward departure.

## III

■ The Court also identified an additional, separate basis for downwardly departing, applicable regardless of whether the relevant conduct be based upon charged, uncharged or acquitted conduct. It was established as far back as a decade ago that where an offense level "has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense, a downward departure may be warranted on the ground that minimal participation exists to a degree not contemplated by the guidelines." *United States v. Restrepo*, 936 F.2d 661, 667 (2d Cir.1991) (minimal role departure of four levels warranted where defendant's role in laundering narcotics proceeds was limited to loading money on to a truck); *see also United States v. Alba*, 933 F.2d 1117, 1121 (2d Cir.1991) (minimal role departure appropriate where defendant became involved in drug transaction "shortly before the incident and his participation was limited"); *United States v. Bruder*, 103 F.Supp.2d 155, 180–81 (E.D.N.Y.2000) (minimal role departure appropriate where defendant was not principal assailant in brutal assault). The Court recognized this basis for departure at the original sentence, *see* Transcript of Sentencing Minutes, August 8, 2000 at 36 (citing *Restrepo* for the proposition that where the "monetary table[ ] bears little or no relationship to the defendant's role in the offense and greatly magnifies the sentence, the district court should have the

discretion to depart downward"), and the Circuit Court correctly noted that the District Court considered as part of its downward departure mix, in addition to the rejected grounds for departure, "that Rozbicki's participation in the conspiracy was minimal to a degree not contemplated by the Guidelines." *Koczuk*, 252 F.3d at 96. Remand was warranted because the Circuit Court could not conclude "that the District Court would have departed downward without relying on [the] erroneous grounds." *Id.* at 99.

■ At the resentence, the Court made clear that the principle articulated by the Circuit in *Restrepo* and *Alba* separately supported the downward departure. Noting that Rozbicki's role in the conspiracy bore little correlation to the 11 million dollars ascribed to Koczuk's caviar business since Rozbicki "was not actively involved in Mr. Koczuk's business," was "merely a low-level employee in Mr. Koczuk's operation serving mainly as a chauffeur and interpreter," primarily was "taking orders from Koczuk," and made "small sums of money," Transcript of Sentencing Minutes August 16, 2001 at 41, the Court concluded: "Taking into account the relevant conduct universe for which Rozbicki is being held responsible and the relative roles of peripheral members of similar conspiracies, a four-level minimal role reduction mandated by the guidelines simply does not adequately reflect the degree of Rozbicki's participation in the conspiracy." *Id.* at 41–42.

## IV

■ In addition to the two separate bases for downward departure as a consequence of the relevant conduct ascribed to the acquitted counts, the Court believed that Rozbicki's rehabilitative efforts subsequent to his arrest, although not sufficient standing alone for a downward departure,

merited some departure consideration in combination with either basis for relevant conduct departure. *See United States v. Broderson*, 67 F.3d 452, 459 n. 1 (2d Cir. 1995) (recognizing that the commentary to Guidelines § 5K2.0 provides for departure in a case where a combination of characteristics or circumstances differ significantly from the "heartland" cases, "even though none of the characteristics or circumstances individually distinguishes the case"). As noted at the resentence, more than a year had passed since Rozbicki was convicted, and he used that time to develop his career opportunities and participate in community service.[5] He has been gainfully employed as an editor and employment manager of a Polish-language newspaper. In addition, having won the personal confidence of his attorney, he worked as a temporary secretary for Mr. Adler. Further, Rozbicki, on a *pro bono* basis, admirably assisted a human rights group seeking to locate Polish–Americans exiled in Siberia during the Soviet regime. Finally, the Court recognized in Rozbicki's recent self-surrender his desire to hasten his return to his position with the newspaper and the recommencement of a law-abiding life. Based upon Rozbicki's rehabilitative efforts, the Court found it highly unlikely that he would again engage in unlawful conduct.[6]

---

[5]. The Court did not make any specific findings as to which rehabilitative efforts preceded and post-dated the original sentence; however, it appears from the submissions in support of this basis for departure that most, if not all, occurred after the initial sentence. No departure application for post-offense rehabilitation was made at the first sentence.

[6]. Although the government argued at the resentence that Rozbicki did not merit any consideration for post-offense rehabilitation, it did not call the Court's attention to or base its opposition on the recently enacted Guidelines Policy Statement providing that "[p]ost sentencing rehabilitation efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." Guidelines § 5K2.19 (effective November 1, 2000). Nonetheless, the Court should have been aware of this Guidelines amendment at the time of resentencing. The Court recognizes that even if it were so inclined, which it is not, it would now be powerless to change the sentence, barring further remand from the Circuit Court. *See United States v. Abreu–Cabrera*, 64 F.3d at 70–74. Should the government decide to appeal and should it raise the issue of the application of this new Guidelines Policy Statement to the present case, the Circuit Court presumably would determine whether the government waived the issue by failing to raise it at the time of resentencing. *See United States v. Diaz*, 176 F.3d 52, 118 (2d Cir.1999) (requiring defendant to voice objection at sentence in order to preserve sentencing claim for appeal). If it determined there was no waiver, it would then be presented with the *ex post facto* issue of whether Rozbicki should nonetheless be entitled to the benefit of the prior Guidelines Manual, permitting consideration for departure purposes of all post-offense rehabilitative efforts up to the time of resentence, *see United States v. Core*, 125 F.3d 74 (2d Cir.1997), since Guidelines § 5K2.19 clearly is intended to be binding, *see United States v. Maria*, 186 F.3d 65, 69 n. 4 (2d Cir.1999), and would expose Rozbicki to greater punishment than he would otherwise have received for his pre-amendment offense. *See* Guidelines § 1B.1.11; *United States v. Patasnik*, 89 F.3d 63 (1996) (addressing *ex post facto* issue in regard to new Application Note). The Court expresses no opinion on this issue.